IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

**LEE ESPERSON, and others
similarly situated,**

        **Plaintiff,**

v.                                                                                  No. 2:10-cv-02130-STA-cgc

**TRUGREEN LIMITED PARTNERSHIP
and TRUGREEN, INC.,**

        **Defendants.**

---

**REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION TO TRANSFER VENUE**

---

Before the Court is Defendants Trugreen Limited Partnership and Trugreen, Inc.'s (collectively "Defendants") Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a) (Docket Entry "D.E." #26). The instant motion was referred to United States Magistrate Judge Charmiane G. Claxton for Report and Recommendation (D.E. #27). For the reasons set forth herein, the Court RECOMMENDS that Defendants' Motion to Transfer be GRANTED.

**I. Introduction**

Plaintiff Lee Esperson ("Esperson" or "Plaintiff") brought the instant case on behalf of himself and others similarly situated under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., ("FLSA"). Defendants are a professional lawn care and landscape service that maintains its headquarters in Memphis, Tennessee, as well as approximately three hundred branches throughout the United States. Esperson was formerly employed at Defendants' Acworth, Georgia branch. In

1

this lawsuit, Esperson claims that he and other similarly situated employees were denied proper overtime compensation because (1) Defendants improperly used the fluctuating workweek method of calculating employee pay in violation of 29 C.F.R. § 778.114, and (2) Defendants automatically deducted meal breaks from employee compensation without regard to whether employees worked during their meal breaks.

On May 21, 2010, Defendants filed a Motion to Transfer Venue requesting that this Court transfer the case to the Northern District of Georgia, Atlanta Division. Defendants argue that "Plaintiff worked for Defendant in Acworth, Georgia, upon information and belief Plaintiff still resides in Georgia, the locus of facts relevant to this lawsuit occurred in Georgia, the documentary and physical evidence are located in Georgia, and the witnesses work and reside in Georgia." Def.s' Mot. to Transfer Venue at 1. Defendants further argue that the discovery necessary in this action is located in the Northern District of Georgia, including as follows: (1) "compensation agreements and timesheets that Plaintiff signed are stored in Georgia"; (2) "the supervisors and managers who discussed the compensation agreements with Plaintiff and managed his work hours and time records reside in Georgia"; (3) "the supervisors and managers, who directed and oversaw Plaintiff's day-to-day job duties, work and reside in Georgia"; and, (4) the evidence relevant to Defendants Motor Carrier Act exemption ("MCA exemption"), 29 U.S.C. § 213(b)(1), including evidence "regarding the commercial motor vehicles that Plaintiff drove and the products moving in interstate commerce that Plaintiff transported in serving Trugreen customers" is located in Georgia. Def.'s Mot. to Transfer Venue at 4.

Plaintiffs respond that the "focus of this action is on Defendants' corporate policy of wrongfully compensating employees throughout the country" and on "Defendants' corporate

policies and procedures governing compensation of employees from Defendants' corporate headquarters, located in Memphis, Tennessee." Pl.'s Resp. to Def.s' Mot. to Transfer Venue at 3. In essence, Plaintiff asserts that Defendants' corporate policies that are made in Memphis, Tennessee, not the specific details of Esperson's employment in Acworth, Georgia, are at issue in the case.[1] Plaintiff argues that this is particularly true if the case is certified as a nationwide class action.

## II. Analysis

The sole issue presented in the instant motion is whether this case should be transferred to the United States District Court for the Northern District of Georgia, Atlanta Division pursuant to 28 U.S.C. § 1404(a). Section 1404(a) states as follows: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In weighing the statutory factors, it is paramount to consider that Section 1404(a) provides "for a transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." Dusan v. Barrack, 376 U.S. 612, 645-46 (1964).

The party requesting the transfer bears the burden of showing that the transfer is appropriate. See Mead Data Central, Inc. v. West Publishing Co., 679 F. Supp. 1455, 1457 (S.D.Ohio 1987);

---

[1] On June 29, 2010, Plaintiffs moved for conditional certification as a collective action pursuant to 29 U.S.C. § 216(b). The motion is currently pending before the District Court, and the District Court advised in its June 29, 2010 Order Denying Motion to Stay that it will "not issue a ruling on Plaintiff's motion for conditional certification with Defendants' motion for transfer still pending" because "such action could lead to inconsistent rulings if the case is ultimately transferred." Order Denying Defendants' Mot. to Stay at 6-7, June 29, 2010. Accordingly, on August 11, 2010, the District Court granted Defendants an extension to respond to the motion for conditional certification, ordering them to respond thirty days after the Court enters an order resolving Defendants' Motion to Transfer Venue.

Gdovin v. Catawba Rental Co., 596 F. Supp. 1325, 1326 (N.D.Ohio 1984).  It is well-settled that "[m]erely shifting the inconvenience from one party to another" does not satisfy the movant's burden.  See Terence McFagdon v. The Fresh Market, Inc., No. 05-2141-D/V, 2005 WL 3879037, at *2 n.1 (Oct. 21, 2005).  Despite these established principles, the parties dispute precisely what burden of proof applies to a motion to transfer.  Defendants assert that they must prove that the transferee forum is more convenient by a preponderance of the evidence.  Plaintiffs posit that, unless the balance strongly favors the defendant, the plaintiff's choice of forum should rarely be disturbed.

### *A.  Burden of Proof*

The inquiry into the proper standard applicable to a motion to transfer pursuant to Section 1404(a) must begin with a discussion of the manner in which proposed transfers were analyzed before Section 1404's enactment, as those principles have guided the development of the legal framework applicable to a motion to transfer.  In the seminal case of Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947), the Supreme Court considered the doctrine of *forum non conveniens*, a principle that originated in state courts and was applied in federal courts that allows a court to "resist imposition of its jurisdiction even when jurisdiction is authorized."  Id. at 507.  The Gulf Oil court listed several "[i]mportant considerations" to weigh but did not set forth an exhaustive list.  Id.  Ultimately, under the doctrine of *forum non conveniens*, the Gulf Oil Court concluded that, "unless the balance is *strongly* in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."  Id. (emphasis added).

Following the enactment of Section 1404, the Sixth Circuit considered the appropriate standard for motions to transfer venue and, relying upon Gulf Oil and the *forum non conveniens* doctrine, determined that such motions should not be granted unless the balance of factors weighs

4

strongly in favor of the movant. See Nicol v. Koscinski, 188 F.2d 537, 537 (6th Cir. 1951) (quoting Gulf Oil, 330 U.S. at 508). However, when this issue was subsequently raised before the United States Supreme Court in Norwood v. Kilpatrick, 349 U.S. 29 (1955), the Court determined that the "forum non conveniens doctrine is quite different from Section 1404(a)." Id. at 31. Thus, the Supreme Court concluded that the "notion that [Section 1404] was a mere codification of existing law relating to forum non conveniens is erroneous. It is perfectly clear that the purpose . . . was to grant broadly the power of transfer for the convenience of the parties and witnesses, in the interest of justice. . . ." Id.

Accordingly, the Norwood court instructed that Section 1404's "words should be considered for what they say, not with preconceived limitations derived from the forum non conveniens doctrine." Id. Upon reviewing the statutory language, the Norwood court concluded that "the term 'for the convenience of parties and witnesses, in the interest of justice,' intended to permit courts to grant transfers upon a *lesser showing of inconvenience*" than the Gulf Oil test. Id. at 32 (emphasis added). The Norwood court continued to explain that the same factors utilized in the Gulf Oil analysis, including the plaintiff's choice of forum, should still be considered under a Section 1404 motion. Id. However, based upon the lesser showing required for a transfer post-Norwood, the "discretion to be exercised is broader." Id.; see also Lemon v. Druffel, 253 F.2d 680, 683-84 (6th Cir. 1958).

Following Norwood, courts disagreed to such an extent on the appropriate standard for motions to transfer venue under Section 1404(a) that one court opined that deducing what standard applies has become a "difficult task." See Roberts Metals, 138 F.R.D. at 92. Some courts continued to analyze the transfer question under the Gulf Oil rubric by requiring the moving party to make a

"strong showing" that the balance of factors favors transfer to overcome the great weight given to the plaintiff's choice of forum. See Roberts Metals,138 F.R.D. at 92 (discussing post-Norwood approaches to Section 1404). As grounds for this approach, these courts solely rely upon Gulf Oil, its progeny, and the doctrine of *forum non conveniens*. See Roberts Metals, 138 F.R.D. at 92-93 & n.3.

Among the courts that have taken this approach are Hanning v. New England Mutual Life Ins. Co., 710 F. Supp. 213 (6th Cir. 1989) and Reese v. CNH America LLC, 574 F.3d 315 (6th Cir. 2009). In Hanning, the Sixth Circuit acknowledged that Norwood required a "lesser showing of inconvenience" but then relied upon the pre-Norwood holding in Nicol for the premise that the factors should be "strongly in favor of a transfer before such will be granted." Hanning, 710 F. Supp. at 214 (quoting Gulf Oil, 330 U.S. at 508). In Reese, the Sixth Circuit relied upon Dowling v. Richardson-Merrell, Inc., 727 F.2d 608 (6th Cir. 1984), for the premise that, "'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Id. (quoting Dowling, 727 F.2d at 612). However, the Dowling case was brought by foreign nationals against an American corporation and, as such, was analyzed under the doctrine of *forum non conveniens* rather than Section 1404. Dowling, 727 F.2d at 609. In addition to Hanning and Reese, certain District Courts in the Sixth Circuit have also continued to follow Gulf Oil's strong showing requirement. See, e.g., Alice Franklin v. Kellogg Co., No. 2:08-2268-JPM-tmp, 2008 WL 2896947, at *1 (W.D.Tenn. July 22, 2008); Tuna Processors, Inc. v. Hawaii Intern. Seafood, Inc., 408 F. Supp. 2d 358, 360 (E.D.Mich. 2005).

Other courts have considered Section 1404(a)'s language and the Supreme Court's instruction in Norwood to determine that a preponderance-of-the-evidence standard is appropriate

6

for motions to transfer.[2] These courts have concluded that the movant must only demonstrate that the "forum to which it desires to transfer the litigation is the more convenient *vis a vis* the plaintiff's initial choice." Mead Corp. v. Oscar J. Boldt Constr. Co., 508 F.Supp. 193, 198 (S.D.Ohio 1981); accord Int'l U.A.W., 875 F. Supp. at 433; Riley, 1994 WL 16014441 at *2; Roberts Metals, 138 F.R.D. at 93. Thus, rather than requiring a "strong" showing, these courts require that a balance of the factors preponderates in favor of transfer. In Roberts Metals, the Sixth Circuit affirmed the District Court's determination that it is erroneous to utilize the Gulf Oil standard on motions to transfer and that, instead, the lesser showing of a preponderance of the evidence applies. 22 F.3d 1104 (6th Cir. 1994). Other district courts within the Sixth Circuit have also acknowledged that a less stringent standard than the Gulf Oil test applies without setting forth a precise test.[3]

Upon review, the Supreme Court's instruction in Norwood explicitly requires a "lesser showing of inconvenience" than Gulf Oil to permit the district court to exercise broader discretion than under the doctrine of *forum non conveniens*. 349 U.S. at 32. For this reason, the Court agrees with the Roberts Metals court's reasoning that, "in light of the language of the statute itself and Supreme Court precedent," the continuation of the "strong showing" requirement under Gulf Oil is "not well-grounded." 138 F.R.D. at 92, aff'd per curiam, 22 F.3d 1104 (6th Cir. 1994). Additionally, while the Hanning and Reese courts briefly referenced the "strong showing"

---

[2] See Int'l U.A.W. v. Aluminum Co. of America, 875 F. Supp. 430, 433 (N.D.Ohio 1995); Richard Riley v. Cochrane Furniture Company, Inc., No. 94-CV-7101-DT, 1994 WL 16014441, at *2 (E.D.Mich. July 7, 1994); Roberts Metals, Inc. v. Florida Properties Marketing Group, Inc., 138 F.R.D. 89, 93 (N.D.Ohio 1991), aff'd per curiam, 22 F.3d 1104 (6th Cir. 1994); Gdovin, 596 F.Supp. 1325, 1326 (N.D.Ohio 1984).

[3] See Allenberg Cotton Co., No. 06-2449, 2007 WL 2156352, at *2 & n.2 (W.D.Tenn. July 25, 2007); Union Planters Bank, N.A. v. EMC Mortgage Corp., 67 F. Supp. 2d 915, 921 (W.D.Tenn.1999); Mead Corp., 508 F. Supp. at 197.

7

requirement of Gulf Oil and its progeny, the Roberts Metals court had occasion to meticulously analyze and discuss the various approaches to post-Norwood motions to transfer. 138 F.R.D. at 92. Thus, because the Roberts Metals court had the opportunity to thoroughly examine the issue, set forth the conflicting viewpoints on the burden of proof, and reached its ultimate conclusion based upon the language of Section 1404 and the Supreme Court's ruling in Norwood, this Court is inclined to follow its approach. Furthermore, as the courts that have undertaken an analysis what constitutes a "lesser showing of inconvenience" have uniformly determined that the preponderance-of-the-evidence test is appropriate,[4] and as this standard and the renunciation of the Gulf Oil analysis under Section 1404 has been affirmed by the Sixth Circuit, see Roberts Metals, 138 F.R.D. 89, 93 (N.D.Ohio 1991), aff'd per curiam, 22 F.3d 1104 (6th Cir. 1994), this Court will require that the movant establish that the balance of the factors preponderate in favor of transfer.

### B. Factors to Balance in Transfer Determination

As the Court has determined the appropriate burden of proof for the motion to transfer venue, the next step is to set forth what factors must be weighed under Section 1404(a). Initially, Section 1404(a) sets forth three categories that courts must balance: (1) convenience of the parties and witnesses; (2) the interests of justice; and (3) where the case might have been brought. 28 U.S.C. § 1404(a). However, the Norwood court made clear that, in weighing these statutory factors, the court should still utilize the "[i]mportant considerations" set forth in Gulf Oil, even though the burden of proof under Section 1404 is less stringent. Norwood, 349 U.S. at 32; Gulf Oil, 330 U.S.

---

[4] See Int'l U.A.W. v. Aluminum Co. of America, 875 F. Supp. 430, 433 (N.D.Ohio 1995); Richard Riley v. Cochrane Furniture Company, Inc., No. 94-CV-7101-DT, 1994 WL 16014441, at *2 (E.D.Mich. July 7, 1994); Roberts Metals, Inc. v. Florida Properties Marketing Group, Inc., 138 F.R.D 89, 93 (N.D.Ohio 1991), aff'd per curiam, 22 F.3d 1104 (6th Cir. 1994); Gdovin, 596 F.Supp. 1325, 1326 (N.D.Ohio 1984).

507.

In <u>Gulf Oil</u>, the Court made clear that it had not "attempted to catalogue the circumstances which will justify or require either grant or denial of remedy." 330 U.S. at 508. Furthermore, the determination as to what factors are appropriate to be considered in each case is left "to the discretion of the court to which plaintiff resorts." <u>Id.</u> at 508. However, the Court did provide instruction on the essential factors that should be weighed in considering a transfer of venue:

> An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. . . .
>
> Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home.

<u>Id.</u> at 508-509.

In addition to the non-exhaustive list of considerations set forth in <u>Gulf Oil</u>, courts have set forth other important factors for courts to weigh under Section 1404. One of the key considerations, which originated from <u>Gulf Oil</u> and the doctrine of *forum non conveniens*, is the plaintiff's choice of forum. However, the weight to be given to this factor has evolved following the enactment of Section 1404. While the <u>Gulf Oil</u> court had held that a plaintiff's choice of forum should "rarely be disturbed," 330 U.S. at 508, the Sixth Circuit held that, post-<u>Norwood</u>, the "choice of the forum by the [plaintiff] is not longer as dominant a factor . . . ." <u>Lemon</u>, 253 F.2d at 685.

9

Following Lemon, the United States Supreme Court, citing Norwood, parenthetically indicated that Section 1404 "accords broad discretion to District Court, and plaintiff's choice of forum is only one relevant factor for its consideration." Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 31 (1988). Other district courts in the Sixth Circuit have followed Stewart and Lemon's reasoning and balanced plaintiff's choice along with the remaining factors. See Union Planters, 67 F. Supp. 2d 915 at 921; Roberts Metals, 138 F.R.D. at n.4, aff'd per curiam, 22 F.3d 1104 (6th Cir. 1994); DeMoss v. First Artists Production Co., 571 F. Supp. 409, 413 (N.D.Ohio 1983); Neff Athletic Lettering Co. v. Walters, 524 F. Supp. 268, 272 (S.D.Ohio 1981). For example, the DeMoss court stated that "[c]ourts in this circuit do not assign plaintiff's choice paramount importance, but simply treat it as one factor to be weighed equally with other relevant factors." 571 F. Supp. at 413.[5] Thus, this Court finds that it is appropriate to consider the plaintiff's choice of the forum as one relevant factor to the preponderance-of-the-evidence determination.

---

[5] But see, e.g., Nicol, 188 F.2d at 537 (concluding that, pre-Norwood, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."); Kellogg, 2008 WL 2896947, at *1 ("As a general rule, there is a 'strong presumption' in favor of the plaintiff's selection of forum, and the plaintiff's choice should not be altered 'unless the defendant carries his burden of demonstrating that the balance of convenience *strongly* favors transfer."); Tuna Processors, 404 F. Supp. 2d at 360 ("'Generally, a plaintiff's choice of forum will be given substantial deference. However, where the plaintiff has little or no connection to the chose forum, its reasons for choosing and remaining there should be given less weight.'") (citations omitted); Steelcase, 336 F. Supp. 2d at 720 ("One of the most significant factors in considering whether venue should be transferred is the plaintiff's choice of forum. In general, a plaintiff's choice of forum is entitled to substantial consideration in balancing the § 1404(a) factors. This is especially true where the plaintiff also resides in the forum. On the other hand, the plaintiff's choice of forum is entitled to significantly less weight where the forum has no connection with the matter in controversy.") (citations omitted); Ellipsis, Inc. v. Colorworks, Inc., 329 F. Supp. 2d 962 (W.D.Tenn. 2004) (stating that the "plaintiff normally has a right to select its forum"); Plough, Inc. v. Allergan, Inc., 741 F. Supp. 144, 148 (W.D.Tenn. 1990) (stating that there a "'strong presumption in favor of plaintiff's choice of forum'") (citations omitted).

In addition to the general weight attributed to a plaintiff's choice of forum, courts have given this factor varied weight depending upon the facts of the case. Courts have stated that a plaintiff's choice of forum "has minimal value where none of the conduct complained of occurred in the forum selected by the plaintiff." Mead Corp., 508 F. Supp. 193, 198 (S.D.Ohio 1981); see also Tuna Processors, 404 F. Supp. 2d at 360; Steelcase, Inc. v. Smart Techs., Inc., 336 F. Supp. 2d 714, 720 (W.D. Mich. 2004). In putative class action cases, some courts have "diminished the weight to be accorded the plaintiff's choice of forum," but other courts have "refused to accord diminished weight where most or all members of the class reside in the same district." Int'l U.A.W., 875 F. Supp. at 433 (citations omitted). Finally, the weight given to Plaintiff's choice "must be accorded at least some additional weight" if Plaintiff elects to file his action where the corporate defendant established its headquarters. Roberts Metals, 138 F.R.D. at 93 (citing Neff Athletic, 524 F. Supp. at 272; Mead Data, 679 F. Supp. at 675; Cincinnati Milacron Indus. v. Aqua Dyne, Inc., 592 F. Supp. 1113, 1118 (S.D. Ohio 1984)).

Additionally, courts have considered several other factors in the balancing analysis. With respect to the relative docket loads of the transferor and transferee courts, the Sixth Circuit has held that this is an appropriate inquiry, as a prompt trial "is not without relevance to the convenience of parties and witnesses and the interest of justice." Fannin v. Jones, 229 F.2d 368, 369-70 (6th Cir. 1956). While the Sixth Circuit cautioned that a "court should not under § 1404 look to docket conditions in order simply to serve the court's own convenience," the "promptness of determination" may be considered in a motion to transfer. Id. Courts should "ordinarily consider this element by comparing official statistics of the relative docket loads of the two district courts." Roberts Metals, 138 F.R.D. 89 at 94 (citing Neff Athletic, 524 F. Supp. at 274); see also Speed Trac Tech., Inc. v.

Estes Express Lines, Inc., 567 F. Supp. 2d 799, 805 (M.D.N.C. Mar. 4, 2008). However, the parties must present statistical evidence of the relative docket loads for this factor to be considered. Roberts Metals, 138 F.R.D 89 at 94.

Finally, courts have considered the manner in which putative class actions should be addressed with respect to motions to transfer venue. Courts in this district have held that, when a case has not even been conditionally certified, it is impossible to accurately predict the most convenient forum for the entire putative class. For example, in Kellogg, the Court found that the "current geographic composition of the putative class is no indication of the make-up of that class when and if it is eventually certified." 2008 WL 2896947, at *2. In McFagdon, the Court found that the "fact that Plaintiff purports to bring a class action has no bearing on this analysis, as no class has been certified . . . ." 2005 WL 3879037, at *2 n.1. Most recently, in John Smith v. ServiceMaster Holding Corp., 2:09-cv-02456-BBD-dkv, the Court considered a putative FLSA action where an employee of a Louisiana branch of the company sought to bring claims on behalf of himself and others similarly situated in the Western District of Tennessee, which is where the defendants were headquartered. Upon consideration of the weight to be accorded to the putative class action in the motion to transfer, the Court reasoned as follows: "We don't know where the parties who will opt-in to the case, if they opt-in, will be located. The location of the proof, as it standards right now, is in Louisiana. And the events, at least from initial dispute, came to light in Louisiana." Mot. to Transfer Venue Hr'g Tr. 26:21-27:2, June 21, 2010. Thus, the Court granted the motion to transfer venue from the defendants' headquarters to the location where the named plaintiff's grievances occurred. Id. Although Plaintiff relies upon cases outside this District for the proposition that a putative class action should be considered, the Court does not find those cases persuasive in light of the aforementioned authority.

12

### *C. Analysis of Balancing Factors*

Turning to the analysis, the Court begins by recognizing that the parties do not appear to dispute that the instant FLSA case "might have been brought" in the Northern District of Georgia, Atlanta Division. 28 U.S.C. § 1404(a); see also Def.s' Reply at 9. The parties also do not dispute that either the United States District Court for the Western District of Tennessee or the United States District Court for the Northern District of Georgia will have familiarity with the applicable law, as all federal district courts are presumed to be equally familiar with and competent in deciding federal questions. See, e.g., Kay v. Nat'l City Mortgage Co., 494 F. Supp. 2d 845, 857 (S.D.Ohio 2007); DeVaughn v. Inphonic, 403 F. Supp. 2d 69, 73 (D.D.C. 2005). Thus, the Court's analysis will focus on the considerations applicable to weighing the convenience of the parties and witnesses and the interests of justice. 28 U.S.C. § 1404(a).

### *1. Convenience to the Named Parties*

With respect to the convenience to the named parties,[6] the Acworth, Georgia branch employees reside in the Atlanta metropolitan area and are therefore more convenient to the Northern District of Georgia. (Mot. to Transfer Venue, Exh. A, ¶ 1; Exh. B, ¶¶ 1, 7, 8; Exh. C, ¶ 1.) Defendants posit that Plaintiff's last-known address is in Georgia as well, which Plaintiff does not dispute in either his response or sur-reply to the Motion to Transfer. See Mot. to Transfer, Exh. A, ¶ 6. Thus, based upon the limited information before the Court, it appears that Plaintiff is more convenient to the Northern District of Georgia as well.

Notwithstanding the convenience of Plaintiff and the Acworth, Georgia employees to the Northern District of Georgia, Plaintiff asserts that Defendants' corporate employees based at its

---

[6] The Court will address all issues relating to the putative class action independently. See, infra, Section C.8.

13

Memphis, Tennessee headquarters would not be convenient to the Northern District of Georgia. Plaintiff has not provided any evidence to substantiate precisely whom at the Memphis, Tennessee headquarters would be involved as a party-representative in the instant matter. In fact, Plaintiff only cursorily opines that certain representatives "*may* be in Tennessee at Defendants' corporate headquarters." Pl.'s Resp. to Def.s' Mot. to Transfer at 11. When a movant fails to present facts regarding whom is alleged to be inconvenienced, the Court cannot conclude that a party has established this factor by a preponderance of the evidence. See Roberts Metals, 138 F.R.D. at 94. Thus, because the Acworth, Georgia representatives and Plaintiff are convenient to the Northern District of Georgia and it is unknown whether any corporate representatives from the Memphis, Tennessee headquarters will be involved as party-representatives in the instant case, this factor weighs in favor of transfer to the Northern District of Georgia.

### *2. Convenience to the Witnesses*

With respect to the convenience of the witnesses, the parties raise several issues. First, Plaintiff asserts that the Memphis, Tennessee corporate employees would not be convenient to the Northern District of Georgia. However, as the Court addressed with respect to the convenience of the parties, the movant must produce evidence regarding the precise details of the inconvenience. Plaintiff has failed to provide any such information. When presented with a similar situation, the Roberts Metals court concluded that "such bare allegations unsupported by affidavit provide no factual basis on which to conclude that the convenience of the witnesses weighs in favor of transfer." 138 F.R.D. at 93, aff'd per curiam, 22 F.3d 1104 (6th Cir. 1994). Thus, the Court held that a party that "fails to identify the witnesses" and "what their testimony would be" cannot establish that a particular forum is inconvenient. Id.

Furthermore, courts have held that the "movant's burden consists of more than simply

asserting that another forum would be more appropriate for the witnesses; 'he must show that the witnesses will not attend or will be severely inconvenienced if the case proceeds in the forum district." Roberts Metals, 138 F.R.D. at 93 (quoting Gdovin, 596 F. Supp. at 1327); see also Weltmann v. Fletcher, 431 F. Supp. 448, 451 n.3 (N.D.Ohio 1976). With respect to any corporate witnesses from Memphis, Tennessee, Plaintiff has failed to meet his burden of providing any evidence of such a risk of non-appearance or severe inconvenience. On the contrary, Defendants have affirmed that they are "unaware of any unwilling witnesses at this time whose attendance would have to be compelled." Pl.'s Mot. to Transfer Venue at 18. Likewise, courts have held that when witnesses are employed by a party, it is likely that they will be cooperative because of their employment responsibilities. See, e.g., Wilcox v. Alternative Entertainment, Inc., No. 09-cv-659-bbc, 2010 WL 691702, at *3 (W.D.W.I. Feb. 26, 2010). Thus, the Court finds that this factor weighs in favor of transfer to the Northern District of Georgia.

### 3. Plaintiff's Choice of Forum

With respect to Plaintiff's choice of forum, the Court has determined that Stewart and Lemon generally require this factor to be accorded equal weight to the other factors in the transfer consideration. Stewart, 487 U.S. at 31; Lemon, 253 F.2d at 685. However, the Court must look at the specific facts of the instant case to determine whether Plaintiff's choice of forum merits increased or decreased weight.

First, a plaintiff's choice must be given increased weight if a plaintiff selects a forum where the acts complained of occurred.[7] In this case, Plaintiff argues that the acts complained of constitute the corporate policies established in the Western District of Tennessee. See also Pl.'s First Am.

---

[7] See Mead Corp., 508 F. Supp. 193, 198 (S.D.Ohio 1981); see also Tuna Processors, Inc. v. Hawaii Intern. Seafood, Inc., 404 F. Supp. 2d 358, 360 (E.D.Mich. 2005); Steelcase, Inc. v. Smart Techs., Inc., 336 F. Supp. 2d 714, 720 (W.D. Mich. 2004).

15

Compl. at ¶¶ 3, 6. Defendants argue that the acts complained of all occurred in the Northern District of Georgia, as that is where the conflicts regarding Plaintiff's employment occurred. Upon review, the acts complained of appear to have occurred both in the Western District of Tennessee, where the policies were allegedly promulgated, and the Northern District of Georgia, where the policies were allegedly effectuated to Plaintiff's detriment. As such, the Court finds that Plaintiff's selection of one of the locations where the acts complained of occurred should increase the weight given to Plaintiff's choice of forum.

Additionally, a plaintiff's choice of forum should be given increased weight if he initiates his action in the district where the defendant's headquarters are located.[8] Plaintiff did precisely that in this case. Thus, the Court finds that the weight to be accorded to Plaintiff's choice of forum must be increased on this basis as well. Based upon this reasoning, the Court finds that Plaintiff's choice of forum substantially weighs in favor of denying the requested transfer to the Northern District of Georgia.

### 4. *Relative Ease of Access to Sources of Proof*

With respect to the relative ease of access to sources of proof, Defendants set forth that the discovery information that is located in the Northern District of Georgia. Specifically, Defendants state that the following is located in or around Acworth, Georgia: (1) all of the "branch's trucks, chemicals, products, and equipment" (Def.'s Mot. to Transfer, Exh. B, ¶ 5); (2) all of the records of Plaintiff's compensation, including each employee's "paper report verifying the accuracy of . . . time entries with any requested adjustments, the commissions . . . earned, and the compensation . . . ." (Def.'s Mot to Transfer, Ex. C, ¶ 7); and, (3) the evidence relevant to Defendants MCA exemption,

---

[8] Roberts Metals, 138 F.R.D. at 93 (citing Neff Athletic, 524 F. Supp. at 272; Mead Data, 679 F. Supp. at 675; Cincinnati Milacron Indus. v. Aqua Dyne, Inc., 592 F. Supp. 1113, 1118 (S.D. Ohio 1984)).

including evidence "regarding the commercial motor vehicles that Plaintiff drove and the products moving in interstate commerce that Plaintiff transported in serving Trugreen customers." (Def.'s Mot. to Transfer Venue at 4.)

On the contrary, Plaintiffs submit that the Western District of Tennessee would be relatively more accessible for the sources of proof because it is the location of the headquarters and the corporate policy-making center. While Plaintiff generally implies that he intends to focus his case on the corporate-wide policies, Plaintiff has not specified what proof is available in the Western District of Tennessee.[9] Accordingly, the Court finds that this factor weighs in favor of transfer to the Northern District of Georgia.

***5. Availability of Compulsory Process and Cost of Obtaining Attendance of Unwilling Witnesses***

With respect to the availability of compulsory process and cost of obtaining attendance of unwilling witnesses, Defendants have affirmed that they are "unaware of any unwilling witnesses at this time whose attendance would have to be compelled" to attend in the Northern District of Georgia. Def.'s Mot. to Transfer Venue at 18. Further, Defendants have affirmatively stated that they are amenable to service of process in the Northern District of Georgia. Id. at 8. Plaintiff has not identified any party that he believes would be required to be compelled to attend in the Western District of Tennessee or asserted that the cost of obtaining the attendance of an unwilling witness would be unreasonable. Thus, the Court finds that this factor does not weigh in either party's favor.

***6. View of Premises***

With respect to view of the premises, Defendants assert that, if any view of the Acworth,

---

[9] Additionally, the McFagdon court held that, despite where a party is headquartered and keeps its records, it has actively subjected itself to suit in another federal district by maintaining a branch in that location. 2005 WL 3879037 at *2.

17

Georgia location or equipment were necessary, it would be more accessible in the Northern District of Georgia. (Mot. to Transfer Venue at 19 & Exh. A-C.) However, Plaintiffs do not address whether any view of the premises will be necessary. Based upon the record before the Court, the Court finds that this factor weighs in favor of transfer to the Northern District of Georgia. Yet because the Court finds that it is unlikely that an FLSA case regarding appropriate compensation will require any view of premises, the Court will only accord this factor slight weight.

### 7. *Relative Docket Load*

As the Fannin court noted, the relative docket loads of the district courts may be considered for the promptness of determination of the case. 229 F.2d at 369-70. To rely upon this factor, a party should present "official statistics of the relative docket loads of the two district courts." Roberts Metals, 138 F.R.D. at 94.

In the instant case, Defendants rely upon statistics from the Administrative Office of the United States Courts to support their argument that the Northern District of Georgia would be able to provide a more prompt adjudication of the case. Specifically, Defendants assert that the median time elapsed from the filing of a civil suit to its final disposition is 11.3 months in the Western District of Tennessee and 8.7 months in the Northern District of Georgia.[10] Further, Defendants assert that the medial total time elapsed in a civil suit's pretrial phase is 11.9 months in the Western District of Tennessee and 4.8 months in the Northern District of Georgia, and the median total time

---

[10] See Def.'s Memo. in Support of Mot. to Transfer Venue at 11 (citing Judicial Business of the United States Courts, 2009, Table C-5, U.S. District Courts—Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending Sept. 30, 2009 ("Table C-5"), available at http://www.uscourts.gov/judbus2009/appendices/C05Sep09.pdf.). The Court was unable to access Table C-5 from the citation provided by Defendants; however, the Court was able to access Table C-5 and verify the statistics provided at the following internet address: http://www.uscourts.gov/Statistics/JudicialBusiness/JudicialBusiness.aspx?doc=/uscourts/Statistics/JudicialBusiness/2009/appendices/C05Sep09.pdf.

elapsed during or after pretrial in the Western District of Tennessee is 25.2 months and 11.7 months in the Northern District of Georgia.[11] Finally, the median total time for civil trials in the Western District of Tennessee is 31.2 months and 26.8 months in the Northern District of Georgia.[12] Thus, based upon the statistics presented by Defendants, the Court finds that this factor weighs in favor of transfer to the Northern District of Georgia.

### 8. *Putative Class Action*

Finally, the Court will consider the implications of Plaintiff's desire to have this case certified as a class action. At this point, Plaintiff has a motion for conditional certification pending before the District Court. However, the District Court has instructed that it will "not issue a ruling on Plaintiff's motion for conditional certification with Defendants' motion for transfer still pending" because "such action could lead to inconsistent rulings if the case is ultimately transferred." Order Denying Defendants' Mot. to Stay at 6-7, June 29, 2010. In that Order, the District Court also noted that this case is "still technically a single plaintiff case with several putative class members waiting in the wings." Id. at 4. The District Court further advised that "the current geographic composition of the putative class is really no indication of the make-up of the class when and if it is eventually certified." Id. at 6. Thus, based upon Kellogg, McFagdon, Smith, and the District Court's instructions regarding the instant case, the Court finds that this factor weighs in favor of transfer to the Northern District of Georgia.

## III. Conclusion

In sum, while the Court finds that Plaintiff's choice of forum must be accorded substantial weight under the circumstances of the instant case, the Court finds that Plaintiff's selection of the

---

[11] See, supra, n.8.

[12] See, supra, n.8.

Western District of Tennessee does not outweigh the convenience of the parties, the convenience of the witnesses, the relative ease of access to sources of proof, the relative docket load of the courts, the pre-certified putative class action status, and the slight weight of any potential need for view of the premises. Accordingly, the Court RECOMMENDS that Defendant's Motion for Transfer of Venue (D.E. #27) be GRANTED and that this action be transferred pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Northern District of Georgia, Atlanta Division.[13]

      **IT IS SO ORDERED** this 5th day of October, 2010.

                                          s/ Charmiane G. Claxton
                                          CHARMIANE G. CLAXTON
                                          UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**

---

[13] Plaintiff has also filed a Motion for Leave to File Second Amended Complaint (D.E. #55), which was referred to the Magistrate Judge for determination. This motion will be addressed in a separate order. However, the Court finds that the determination of that motion does not affect the analysis of the instant motion to transfer.